# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: AIG FINANCIAL PRODUCTS CORP., | : | Chapter 11 |
| Debtor. | : | Bankr. No. 22-11309-MFW |
| EMPLOYEE PLAINTIFFS, | : | |
| Appellants, | : | |
| v. | : | Civ. No. 23-573-GBW |
| AIG FINANCIAL PRODUCTS CORP., | : | |
| Appellee. | : | |

## MEMORANDUM OPINION

This appeal arises in the chapter 11 case of AIG Financial Products Corporation ("AIGFP" or "Debtor"), in connection with a motion to dismiss AIGFP's chapter 11 case, which motion was filed by certain of AIGFP's former employees ("Former Employees") and denied by the Bankruptcy Court's May 10, 2023 Order (B.D.I. 194, D.I. 1-1)[1] ("Denial Order") and accompanying Opinion, *In re AIG Financial Products Corp.*, 651 B.R. 463 (Bankr. D. Del. 2023). The Former Employees have appealed the Denial Order, and AIGFP has moved to dismiss their appeal (D.I. 26) ("Motion to Dismiss") on the basis that the Denial Order is not final under 28 U.S.C. 158(a), and this Court lacks subject matter jurisdiction. For the reasons set forth herein, the Motion to Dismiss is denied.

## I. BACKGROUND

Given the limited issue before the Court, only a brief procedural history is set forth herein. On December 14, 2022, AIGFP filed a voluntary petition for relief under chapter 11 of the

---

[1] The docket of the chapter 11 case, captioned *In re AIG Financial Products Corp.*, No. 22-11309-MFW (Bankr. D. Del.) is cited herein as "B.D.I. __," and the appendix (D.I. 24) filed in support of the Former Employees' opening brief is cited herein as "A-__."

1

Bankruptcy Code. On January 13, 2023, the Former Employees filed a motion to dismiss the bankruptcy case "for cause" pursuant to § 1112 of the Bankruptcy Code. According to the Former Employees, cause existed to dismiss the case because AIGFP did not—as required by § 1112(b)—file its bankruptcy case in good faith. Rather, the Former Employees asserted, AIGFP filed its bankruptcy case based on the pretext that it was in financial distress due to amounts purportedly owed to its parent, with the aim of avoiding payments to the Former Employees under certain deferred compensation plans.[2] The Former Employees' motion to dismiss therefore raised a threshold issue in the chapter 11 case: whether AIGFP initiated the bankruptcy case in good faith and was therefore entitled to the protections afforded and powers granted by the Bankruptcy Code. On March 27, 2023, the Bankruptcy Court held an evidentiary hearing on the motion to dismiss. (A-2817). On May 10, 2023, the Bankruptcy Court issued the Denial Order and accompanying Opinion denying the Former Employees' motion to dismiss the chapter 11 case.

On May 24, 2023, the Former Employees filed their notice of appeal. (D.I. 1). On October 6, 2023, AIGFP filed its Motion to Dismiss the appeal for lack of subject matter jurisdiction. (D.I. 26). Briefing on the Motion to Dismiss the appeal is complete. (*See* D.I. 26, 31, 33). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

II.  **PARTIES' CONTENTIONS**

The district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees" entered by the bankruptcy courts "in cases and proceedings." 28 U.S.C. § 158(a)(1). The Third Circuit treats the finality of orders in the bankruptcy context "pragmatically, looking

---

[2] The Former Employees further asserted that cause existed to dismiss the chapter 11 case because the case would result in the substantial or continuing loss to or diminution of the estate without reasonable likelihood of rehabilitation, pursuant to § 1112(b)(4)(A) of the Bankruptcy Code, and that dismissal of the case was in the best interests of creditors and the Debtor, pursuant to § 305 of the Bankruptcy Code. (*See* B.D.I. 101).

2

at the effect of the district court's ruling." *In re Christian*, 804 F.2d 46, 47-48 (3d Cir. 1986); *see In re Trans World Airlines, Inc.*, 18 F.3d 208, 215 (3d Cir. 1994) (noting that "finality must be viewed more pragmatically in bankruptcy appeals under § 158(d) than in other contexts"). The Third Circuit later distilled this pragmatic approach into a four-factor test that considers "(1) the impact on the assets of the bankruptcy estate; (2) the need for further fact-finding on remand; (3) the preclusive effect of a decision on the merits; and (4) the interests of judicial economy." *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 511 (3d Cir. 2005). This approach is based on the "protracted" nature of bankruptcy proceedings and the fact that they often "involve numerous parties with different claims." *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988).

The Former Employees argue that an order denying dismissal of a chapter 11 case satisfies the test for finality under long standing Third Circuit law. Indeed, over three decades ago, the Third Circuit held that a denial of a motion to dismiss a chapter 11 case for bad faith under § 1112(b) of the Bankruptcy Code is a "final" order under 28 U.S.C. § 158. *In re Brown*, 916 F.2d 120, 124 (3d Cir. 1990). The rationale of *Brown* remains persuasive: "If the order here is not now appealable the entire bankruptcy proceedings must be completed before it can be determined whether they were proper in the first place." *Id.* at 123 (quoting *In re Christian*, 804 F.2d at 48). *Brown* is part of a line of Third Circuit decisions holding that denials of a motion to dismiss a bankruptcy case are final, appealable orders under 28 U.S.C. § 158(a). *See In re Christian*, 804 F.2d at 47-48 (denial of a motion to dismiss chapter 7 case under 11 U.S.C. § 707(b) was a final, appealable order); *In re Taylor*, 913 F.2d 102, 104 (3d Cir. 1990) (denial of a motion to dismiss chapter 11 case was a final, appealable order).

Notwithstanding this controlling precedent, AIGFP argues that two Supreme Court cases—*Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015), and *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020)—have "adopted a more textual approach to bankruptcy

3

finality" which has "overtaken" the Third Circuit's finality determination in *Brown*. (D.I. 26 at 2, 4-5). "[U]nder that approach, an order that does not dispose of an entire case is considered final only when the order finally disposes of a discrete dispute within the larger bankruptcy case." (*Id.* at 2 (citing *Bullard*, 575 U.S. at 501-02; *Ritzen*, 140 S. Ct. at 586-87)). "Applying that controlling precedent," AIGFP argues, "an order denying a motion to dismiss a bankruptcy case is not final because it does not dispose of any discrete dispute within the larger bankruptcy case; it simply allows the entire case to go forward." (*Id.*) While neither *Bullard* nor *Ritzen* even considered whether the denial of a motion to dismiss a chapter 11 case is a final, appealable order, AIGFP asserts that application of the analytical framework applied in these decisions "can yield only one conclusion: such denials are not 'final' within [the scope of 28 U.S.C.] § 158." (*Id.* at 9). "Because the *Brown* line of precedent directly conflicts with *Bullard* and *Ritzen*," AIGFP argues, the Denial Order is "an interlocutory order, not subject to an appeal as of right." (*Id.* at 10). Because the Denial Order does not otherwise warrant leave for interlocutory review, AIGFP argues, the appeal should be dismissed. (*See id.* at 10-14).

### III. ANALYSIS

#### A. The Supreme Court Decisions

As the Supreme Court has explained, "By providing for appeals from final decisions in bankruptcy 'proceedings,' as distinguished from bankruptcy 'cases,' Congress made 'orders in bankruptcy cases ... immediately appeal[able] if they finally dispose of discrete disputes within the larger [bankruptcy] case.'" *Ritzen*, 140 S. Ct. at 587 (quoting *Bullard*, 575 U.S. at 501). "In short, the usual judicial unit for analyzing finality in ordinary civil litigation is the case, but in bankruptcy, it is often the proceeding." *Id.* (internal quotations and alterations omitted).

For purposes of determining the finality of a bankruptcy court order, the Supreme Court explains, the key inquiry is (i) determining the "relevant proceeding," *Bullard*, 575 U.S. at 502—

or "appropriate procedural unit," *Ritzen*, 140 S. Ct. at 588—and (ii) "asking whether the order in question terminates a [relevant proceeding or] procedural unit separate from the remaining case." *See Bullard*, 575 U.S. at 502 (determining the "relevant proceeding" and looking to whether the order in question "finally disposed of discrete disputes within the larger case"); *see Ritzen*, 140 S. Ct. at 588 (determining the "appropriate procedural unit" and looking to 28 U.S.C. § 158, which "asks whether the order in question terminates a procedural unit separate from the remaining case"). It is application of this analytical framework which, according to AIGFP, undermines Third Circuit precedent that an order denying dismissal of a bankruptcy case is a final, appealable order.

### 1. *Bullard*

Recognizing that "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case," the Supreme Court in *Bullard* considered whether a bankruptcy court order denying approval of an individual's proposed chapter 13 repayment plan—now on its fourth iteration—with leave to amend the plan, was "final" under 28 U.S.C. § 158(a). *Bullard*, 575 U.S. at 501 (quoting *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 657, n. 3 (2006)). The parties disagreed as to "how to define the immediately appealable 'proceeding' in the context of the consideration of Chapter 13 plans." *Id.* at 502. In defining the "relevant proceeding" for purposes of determining finality, the *Bullard* Court rejected the "plan-by-plan approach" advocated by the debtor—*i.e.*, each time the bankruptcy court reviews a proposed plan, it conducts a separate proceeding, which results in a final, appealable order. *Id.* "The appropriate procedural unit for determining finality," the *Bullard* Court concluded, "is not a plan proposal, it is 'the process of attempting to arrive at an approved plan.'" *Ritzen*, 140 S. Ct. at 588 (quoting and summarizing its prior holding in *Bullard*, 575 U.S. at 502). While plan proposal rejections

5

may be followed by amended or new proposals, only plan approval "alters the status quo and fixes the rights and obligations of the parties." *Bullard*, 575 U.S. at 502. The "relevant proceeding"—the process of confirming the plan through an iterative negotiations process—was therefore not conclusively resolved or terminated by the order in question, and it was not final. Whereas the *Bullard* Court considered a "proceeding" very different from a motion to dismiss a chapter 11 case, its decision referenced the same pragmatic concerns that animate the Third Circuit's approach to finality—*i.e.*, guarding against "frequent piecemeal appeals" in certain inherently iterative bankruptcy proceedings, while permitting appeals, as Congress has provided, of orders that "finally dispose of discrete disputes within the larger case." *Bullard*, 575 U.S. at 498-99, 504.

    2.    *Ritzen*

In *Ritzen*, the Supreme Court considered a bankruptcy court's denial of a creditor's request for relief from the automatic stay to pursue state court litigation. *See Ritzen*, 140 S. Ct. at 587. The precise issue, as framed by the *Ritzen* Court, was whether "a creditor's motion for relief from the automatic stay initiate[s] a distinct proceeding terminating in a final, appealable order when the bankruptcy court rules dispositively on the motion." *Id.* at 586. Before addressing that question, Justice Ginsburg noted the overarching concerns related to finality determinations in the bankruptcy context, including the possible, needless delay of appeals from discrete, controversy-resolving decisions:

> The ordinary understanding of "final decision" is not attuned to the distinctive character of bankruptcy litigation. A bankruptcy case encompasses numerous "individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." It is thus common for bankruptcy courts to resolve discrete controversies definitively while the umbrella bankruptcy case remains pending. Delaying appeals from discrete, controversy-resolving decisions in bankruptcy cases would long postpone appellate review of fully adjudicated disputes. Moreover, controversies adjudicated during the life of a bankruptcy case may

6

> be linked, one dependent on the outcome of another. Delaying
> appeal until the termination of the entire bankruptcy case, therefore,
> could have this untoward consequence: Reversal of a decision made
> early on could require the bankruptcy court to unravel later
> adjudications rendered in reliance on an earlier decision.

*Ritzen*, 140 S. Ct. at 586-87 (quoting *Bullard*, 575 U.S. at 501).

Turning to the question before it, the *Ritzen* Court took up *Bullard*'s instruction to "inquire 'how to define the immediately appealable 'proceeding' [or procedural unit] in the context of [stay-relief motions]'" and then ask "whether the order in question terminates a procedural unit separate from the remaining case." *Id.* at 590 (quoting *Bullard*, 575 U.S. at 502). The *Ritzen* Court ultimately held that "the adjudication of a motion for relief from the automatic stay forms a discrete procedural unit within the embracive bankruptcy case" and "[t]hat unit yields a final appealable order when the bankruptcy court unreservedly grants or denies relief." *Id.* at 586.

As to the first part of the analysis, the *Ritzen* Court noted that the motion for relief from the stay initiates "a discrete procedural sequence, including notice and a hearing;" that "the creditor's qualification for relief turns on the statutory standard, *i.e.*, 'cause' or the presence of specified conditions;" and that resolution of such a motion "does not occur as part of the adversary claims-adjudication process." *Id.* at 589. Thus, "[u]nder *Bullard*, a discrete dispute of this kind constitutes an independent 'proceeding' within the meaning of 28 U.S.C. § 158(a)." *Id.* (citing *Bullard*, 575 U.S. at 502-05). In reaching this conclusion, the *Ritzen* Court rejected the argument that the order denying stay relief merely decided the forum for claim adjudication, and, as a preliminary step in the claims-adjudication process, was not final. Agreeing that courts should not define the "relevant proceeding" to include "disputes over minor details about how a bankruptcy case will unfold," the *Ritzen* Court rejected such a characterization of the proceeding before it, noting that resolution of a motion for stay relief can have "large practical

consequences" for a creditor, including the remedies available, manner of adjudication, costs, and delay. *See id.* at 590–91.

As to the second part of the analysis, the *Ritzen* Court easily concluded that the order in question "resolve[d] a discrete procedural unit within the embracive bankruptcy case." "Because the appropriate 'proceeding' in this case is the adjudication of the motion for relief from the automatic stay," the *Ritzen* Court explained, "the Bankruptcy Court's order conclusively denying that motion is 'final,'" as it "ended the stay-relief adjudication and left nothing more for the Bankruptcy Court to do in that proceeding." *Id.* at 592.

### B.   Application to the Denial Order

According to AIGFP, "the *Brown* line of precedent directly conflicts with *Bullard* and *Ritzen*." (D.I. 26 at 10). Under the Supreme Court's analytical framework, AIGFP argues, "an order denying a motion to dismiss a bankruptcy case is plainly not 'final' within [the scope of 28 U.S.C.] § 158" because "[t]he appropriate judicial unit [or relevant proceeding] for evaluating the finality of such an order is **the entire chapter 11 case**." (*Id.* at 7) (emphasis added). "In this regard," AIGFP argues, "it is no different than the denial of a motion to dismiss in ordinary civil litigation—all it means is that the case may proceed." (*Id.*) Because the Denial Order does not resolve a discrete proceeding within the case, and does not resolve the chapter 11 case as a whole, AIGFP argues, it cannot properly be described as "final." (*See id.*)

Contrary to AIGFP's position, the analysis applied in *Bullard* and *Ritzen* has not "overtaken" or otherwise "undermined" the Third Circuit's pragmatic approach to finality in the bankruptcy context, nor have those decisions called into question controlling law in this Circuit that an order denying a motion to dismiss a chapter 11 case is a final, appealable order.

With respect to the first part of the analysis, the Court disagrees that, in the context of a motion to dismiss a chapter 11 case for lack of good faith, the relevant proceeding for purposes

of finality is "the entire chapter 11 case," as AIGFP asserts. Rather, the "relevant proceeding" is a determination as to whether AIGFP is entitled to the protections of the Bankruptcy Code—a "discrete dispute[] within the larger [bankruptcy] case." *In re Saco Loc. Dev. Corp.*, 711 F.2d 441, 444 (1st Cir. 1983). Here, as in *Ritzen*, the motion to dismiss the chapter 11 case initiated "a discrete procedural sequence, including notice and a hearing" under § 1112(b)(1) of the Bankruptcy Code. *Ritzen*, 140 S. Ct. at 589. The Former Employees' qualification for relief— dismissal of the chapter 11 case—"turns on the statutory standard, *i.e.*, 'cause,'" which may be based on the Debtor's failure to file its bankruptcy case in good faith under Third Circuit law and/or "the presence of specified conditions" as set forth in § 1112(b)(1)(A)-(P) of the Bankruptcy Code. *Ritzen*, 140 S. Ct. at 589. Finally, the resolution of such a motion "does not occur as part of the adversary claims-adjudication process." *Id.* Thus, "[u]nder *Bullard*, a discrete dispute of this kind constitutes an independent 'proceeding' within the meaning of 28 U.S.C. § 158(a)." *Id.*

With respect to the second part of the analysis, "[b]ecause the appropriate 'proceeding' in this case is the adjudication of the motion [to dismiss the chapter 11 case]," the Denial Order conclusively denying that motion is "final," as it determined that AIGFP is entitled to the protections of the Bankruptcy Code, ended adjudication of the motion to dismiss the chapter 11 case, and "resolve[d] a discrete procedural unit within the embracive bankruptcy case," leaving "nothing more for the Bankruptcy Court to do in that proceeding." *See id.* at 592.

AIGFP incorrectly characterizes the Denial Order as merely permitting the chapter 11 case to proceed and otherwise leaving everyone's rights unaffected. (*See* D.I. 26 at 9). The Court rejects AIGFP's attempt to analogize this proceeding with a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure, a proceeding which simply determines whether claims have sufficient legal basis to proceed to discovery. The motion to dismiss the chapter 11

9

case required notice and a hearing, the submission of evidence, a lengthy opinion, and a final determination on the threshold issue of whether the Debtor filed its petition in good faith—a fact intensive inquiry in which, as the Bankruptcy Court explained, the court must examine the totality of facts and circumstances and determine where a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive. *See In re AIG Financial Products Corp.*, 651 B.R. at 469; *see also generally In re LTL Mgmt., LLC*, 64 F.4th 84, 100 (3d Cir. 2023) (holding that chapter 11 bankruptcy petitions are subject to dismissal unless filed in good faith); *In re SGL Carbon Corp.*, 200 F.3d 154, 159 n.8 (3d Cir. 1999) ("[t]he proponent of an abusive petition does not belong in bankruptcy").

Moreover, resolution of the motion to dismiss the chapter 11 case carried "large practical consequences" for all of the parties. *Ritzen*, 140 S. Ct. at 590. The Denial Order determined whether AIGFP is afforded the myriad powers and protections of the Bankruptcy Code, on the one hand, and determined whether the Former Employees, as creditors of the Debtor, can "isolate their claims from those of other creditors and go it alone outside bankruptcy," on the other hand. *Id.* And, as in *Ritzen*, the "immediate appeal [of the Denial Order,] if successful, will permit creditors to establish their rights expeditiously outside the bankruptcy process." *Id.* at 591.

As the Former Employees correctly point out, whether AIGFP's chapter 11 case proceeds in this context is not merely a "dispute[] over minor details about how a bankruptcy case will unfold." *Ritzen*, 140 S. Ct. at 59. Rather, it is a dispute over the threshold and fundamental issue of whether the bankruptcy case should unfold at all—a discrete dispute, a proceeding separate from the remaining bankruptcy case, which was terminated by the Denial Order and is therefore final and appealable. If "the entire bankruptcy case" is the "relevant proceeding" for purposes of finality of the Denial Order, as AIGFP asserts, then the entire bankruptcy case "must be

10

completed before it can be determined whether [it was] proper in the first place"—a resolution that is neither "desirable" nor "practical." *In re Brown*, 916 F.2d at 123 (quoting *In re Christian*, 804 F.2d at 48). Such a result is clearly at odds with the bankruptcy-specific finality concerns expressed in *Bullard* and *Ritzen,* decisions which adopted an analytical framework ***permitting*** the appeal of orders that "finally dispose of discrete disputes within the larger case," as opposed to one ***foreclosing*** appeals of any orders that do not resolve "the entire bankruptcy case." *Bullard*, 575 U.S. at 501.

Finally, even if there is some degree of tension between controlling Third Circuit law and *Bullard / Ritzen* which this Court has failed to appreciate, that tension falls far short of what is required for this Court to cast *Brown* aside. In the Third Circuit, the only two ways to depart from precedent are through *en banc* review that overturns prior precedent[3] or based on the conclusion that "intervening legal developments have undercut the decisional rationale of [Third Circuit] precedent." *United States v. Stimler*, 864 F.3d 253, 263 (3d Cir. 2017), *vacated in part on other grounds, United States v. Goldstein*, 902 F.3d 411 (3d Cir. 2018). The latter is an "exacting standard," *id.*, which requires a showing that prior precedent "no longer has ***any*** vitality," *West v. Keve*, 721 F.2d 91, 93 (3d Cir. 1983) (emphasis added) (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 644 (3d Cir. 1982)), or is "patently inconsistent" with such intervening legal authority, *United States v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009) (emphasis added). Neither *Bullard* nor *Ritzen* indicate that *Brown* is "patently" inconsistent or

---

[3] The Third Circuit's Internal Operating Procedures provide that a precedential opinion is binding on subsequent panels and may only be overruled *en banc. See* 3d Cir. Internal Operating Procedures 9.1 (2023); *see also Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 867 (3d Cir. 1984) (quoting the Internal Operating Procedures of the Third Circuit and noting "[i]f the judges of this court are bound by earlier panels, *a fortiori* district court judges are similarly bound. Recognition of the hierarchical nature of the federal judiciary requires no less.").

11

no longer has "any" vitality. Without instruction from the Supreme Court or Third Circuit, the Court will not disregard thirty years of controlling precedent.

### IV. CONCLUSION

Neither *Bullard* nor *Ritzen* involved a motion to dismiss a bankruptcy case and thus do not directly implicate *Brown*. Moreover, the analytical framework applied by the Supreme Court in *Bullard* and *Ritzen* is consistent with the Third Circuit's pragmatic approach to determining the finality of orders in the bankruptcy context. For the reasons explained above, the Court will deny the Motion to Dismiss. A separate Order will be entered.

Date: February 27, 2024

_____
UNITED STATES DISTRICT JUDGE